DECISION
This matter is before the court for decision after a jury-waived trial. In the underlying complaint, Plaintiff, a Florida resident, asserts that he is the residuary beneficiary of the will of Philip Boiani who died domiciled in Middletown, Rhode Island on May 30, 1995. In November of 1995, Plaintiff filed a claim in Probate Court in the amount of $105,266.00 which was disallowed in its entirety. The requested sum represented Plaintiff's travel expenses, food expenses, auto expenses including repairs, services provided before and after his mother's death, loss of earnings and attorney's fees.
Mr. Germano testified that Philip Boiani was his stepfather who had raised Plaintiff since Plaintiff was five years old. Plaintiff's mother, who deceased in 1991, had lived in Florida for the preceding thirty years. Mr. Boiani continued to reside in Middletown until his death in 1995.
In late February of 1991, Mr. Germano received a communication at his Tampa home that his mother was gravely ill and in a hospital in Homestead, Florida, some three hundred miles away. Plaintiff explained that his stepfather asked him to "go down there" and do "what had to be done." Sadly, Mrs. Boiani was comatose and was being sustained on a life support system.
When Plaintiff indicated to his stepfather that he was "short of money", his stepfather assured him that he would reimburse him after Mrs. Boiani's demise. Mr. Boiani specifically requested that Plaintiff make funeral arrangements, acquire death certificates, check all banks from Florida City to Miami for possible accounts and prepare the decedent's double-wide mobile home for sale. As to the latter, the Plaintiff is seeking over $10,000 for cleaning and provision of security. Plaintiff testified that his stepfather represented to him that he would give Plaintiff $10,000 if the mobile home sold in the range of $40,000 to $50,000. Mr. Germano did not know to whom or how the mobile home was sold. When he pressed his stepfather for the money, his stepfather always had an excuse and told him not to worry. Mr. Germano testified at trial that he "did these things because [I] loved my father but [I'm] running out of money . . . not that [I] wouldn't have done it out of the goodness of my heart."
Our Supreme Court has ruled that a claimant in the Plaintiff's situation must produce clear and convincing proof of both liability and damages, where a claim for services rendered is filed against the estate of a deceased person on the basis of an alleged oral contract. The closest scrutiny is called for.Lotinville v. Dwyer, 27 A.2d 305, 310 (R.I. 1942). This case is compounded by the fact that the services in controversy were supplied to the claimant's mother, yet he seeks compensation for these services from his stepfather's estate four years later.
Here, the Plaintiff rests his claim of entitlement upon an alleged oral contract with his stepfather for reimbursement for services provided to the predeceasing spouse. Unlike the situations in the cases relied upon, no representations were, or could have been made by Plaintiff's mother regarding compensation for services performed for her benefit. With respect to the distribution of her estate, Mr. Germano was kept informed of all proceedings by Attorney Mortimer Sullivan, executor of Defendant's estate. In June of 1991, Attorney Sullivan notified Plaintiff by mail that Philip Boiani had filed a petition for Administration of Bella Boiani's estate. Mr. Sullivan informed Plaintiff that a hearing would be held at the Middletown Probate Court on June 21, 1991. (See Defendant's Exhibit "F"). On August 9, 1991, Attorney Sullivan explained to Mr. Germano by letter, the proposed distribution of the Bella Boiani estate. (See Defendant's Exhibit "E"). Plaintiff's share was clearly articulated and he was invited to register any opposition to the proposal. Attorney Sullivan testified at the trial that Plaintiff never responded to the letter. Mr. Germano. never filed a claim against the estate of his decedent mother for whom the services were performed. Indeed, he did not document his expenses until four years later when he requested compensation from his stepfather's estate.
The cases which have been provided to the Court are distinguishable. In Traversa v. Smith, 437 A.2d 1358 (RI. 1981), for example, the Plaintiff was specifically told, on repeated occasions, that he would be "taken care of" in the decedent's will. That plaintiff, over a period of eleven years, had expended 5,500 hours ministering to the decedent.
In Totman v. Vernon, 494 A.2d 97 (R.I. 1985). the decedent not only stated that he "would take care of" the plaintiff; but, specifically, that he would bequeath her one quarter of his estate. He in fact did so, but altered the bequest to Plaintiff's detriment in a succeeding will. Similarly, in McAtee v. Jackson, 157 A. 305 (R.I. 1921), mother and daughter specifically discussed the preservation of records of expenditures so that the daughter could file a proper bill against the mother's estate.
Finally, in Chapman v. Industrial Trust Co., 113 A. 867 (R.I. 1921), the testatrix told her daughter-in-law that she would "have to get her pay later." There, the court held that a jury question existed as to whether the parties had a reasonable and proper expectation that the daughter-in-law would be compensated for the "necessary and arduous services rendered." Id. at 868.
The evidentiary record in the instant case simply can not support a conclusion that a reasonable and proper expectation was created that Philip Boiani would compensate Plaintiff for the services performed four years earlier. There is nothing of a testamentary nature in the comments of Mr. Boiani. With the exception of the assurance to give Mr. Germano $10,000 from the proceeds of the trailer sale, Mr. Boiani made only vague references to reimbursement. Plaintiff ceased requesting reimbursement because he testified, in any event, that he "did these things because he loved his father" and "would have done it out of the goodness of [his] heart." Nowhere in the record is there any evidence that Mr. Boiani intended to compensate Plaintiff by way of a bequest. Nor is there evidence that discussions concerning reimbursement continued throughout the four years this situation remained dormant. Indeed, it was not until after the death of Philip Boiani that this claim sprouted and the "expenses" for the first time were reduced to writing.
The Court is of the opinion that Plaintiff has failed to prove any claim of entitlement against the Defendant's estate. Therefore judgment must enter on behalf of the defendant.